UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
DASHAN HUNTER,

                Plaintiff,

  -against-                    **MEMORANDUM AND ORDER**
                                     Case No. 17-CV-4105 (FB)
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.
---------------------------------------------------x

*Appearances:*
For the Plaintiff:                               *For the Defendant:*
KENNETH R. HILLER                     RICHARD P. DONOGHUE
Law Offices of Kenneth Hiller PLLC   United States Attorney
6000 North Bailey Avenue             Eastern District of New York
Buffalo, New York 14226              271 Cadman Plaza East
                                                    Brooklyn, New York 11201

                                                    By:   DARA A. OLDS
                                                                 Assistant United States Attorney

**BLOCK, Senior District Judge:**

      Dashan Hunter seeks review of the Commissioner of Social Security's final decision denying his application for Supplemental Security Income ("SSI"). Both parties move for judgment on the pleadings. For the reasons stated below, Hunter's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings.

# I

Hunter, who was born in 1971, suffers from schizoaffective disorder, a serious mental illness. Because of his condition, he has a limited work history, last working briefly as a janitor in 2011.

Hunter applied for SSI in December 2012, alleging an onset date of July 11, 2011. After his application was denied, he sought a hearing before an administrative law judge ("ALJ"), at which he was represented by counsel.

Extensive medical evidence was presented to the ALJ. Pertinent here are the opinions of Kenneth Caccavale, M.D., and Sally Morcos, Psy.D.

Dr. Caccavale was Hunter's treating psychiatrist. At the Commissioner's request, he provided a medical source statement in which he opined that Hunter had moderate limitations with respect to complex instructions and decision-making, mild limitations with respect to simple instructions and decision-making, and mild limitations in his ability to function in a work setting. Dr. Caccavale further opined that Hunter had "focus problems related to ongoing occasional auditory/visual hallucinations." AR 502.

Dr. Morcos, a consulting psychologist, conducted a mental status examination. She opined that Hunter could "follow and understand simple directions and instructions," "perform simple tasks independently," "perform complex tasks with one on one supervision," and "make appropriate decisions." AR

2

351–52. She further opined, however, that Hunter might have difficulty "maintaining attention and concentration," "maintaining a regular schedule," "learning new tasks," "relat[ing] adequately with others," and "appropriately deal[ing] with stress." AR 351–52.

In addition to the medical evidence, the ALJ also considered the testimony from a vocational expert ("VE"). The ALJ asked that VE to consider an individual who "could work at all exertion levels," but who could "only do simple and routine tasks" and could have "no contact with the public and only occasional contact with coworkers." AR 53. The VE responded that such an individual could work as a machine operator, an unskilled job. The ALJ then posited "the additional limitation that the person would be off task 15 percent of the time," and asked, "[W]ould there be work for that person?" The VE answered: "No, not competitively." AR 53.

The ALJ rendered his decision on January 25, 2016. Applying the familiar five-step sequential evaluation process,[1] he concluded that (1) Hunter had not

---

[1] The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir.

engaged in substantial gainful activity since his application date, (2) his mental disorder was severe, but (3) did not meet the criteria for a presumptively disabling impairment in the Commissioner's Listing of Impairments.

Before turning to steps four and five, the ALJ assessed Hunter's residual functional capacity ("RFC"). Because Hunter did not have any physical impairments, the ALJ found him able "to perform a full range of work at all exertional levels." AR 26. The ALJ further found, however, that Hunter's mental condition imposed a non-exertional limitation restricting him to "unskilled work." AR 26.

Returning to the five-step evaluation process, the ALJ found that Hunter (4) did not have any past relevant work, but (5) could perform unskilled work that existed in significant numbers in the national economy. In the later regard, he found that Hunter's non-exertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels." AR 30.

Based on his findings, the ALJ concluded that Hunter was not disabled. The Commissioner's Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. Hunter timely sought judicial review.

---

2014) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.*

## II

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

Hunter argues that the ALJ's RFC assessment was erroneous because it did not include limits on his ability to concentrate. The Court agrees.

The crux of the ALJ's RFC assessment was that Hunter's mental condition limited him to unskilled work. He did not link that conclusion to any specific mental limitations. Instead, he cited Social Security Ruling 85-15, which instructs ALJs how to determine the effect of non-exertional impairments on a claimant's ability to work. With respect to mental impairments, an ALJ first considers whether the impairment meets the criteria for a listed impairment. If not, the ALJ next considers whether the impairment precludes the claimant's past work. If so—or if, as here, there is no relevant past work—"the final consideration is whether the person can be expected to perform unskilled work." SSR 85-15, 1985 WL 56857, at *4.

5

SSR 85-15 then connects unskilled work to specific abilities: "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* Thus, Dr. Caccavale's opinion that Hunter had moderate limitations dealing with respect to *complex* instructions was not inconsistent with the demands of unskilled work. Dr. Morcos's opinion that Hunter might have difficulty relating to others is greater cause for concern, but another section of SSR 85-15 observes that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people." *Id.*

In any event, the ALJ incorporated those limitations into his first hypothetical to the VE. The limitation on complex instructions was reflected in the assumption that the hypothetical claimant could "only do simple and routine tasks," AR 53, while the limitation on social interactions was reflected in the assumption that he could have "no contact with the public and only occasional contact with coworkers," AR 53. The VE opined that an individual with such limitations could still perform the unskilled job of machine operator.

SSR 85-15 further reflects, however, that even unskilled work demands an ability to perform the necessary tasks "on a sustained basis." 1985 WL 56857, at *4. The ALJ must have had that requirement in mind when he posed the second

6

hypothetical to the VE, asking her to assume "the additional limitation that the person would be off task 15 percent of the time." AR 53; *see also McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) ("[A]n ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace.").

The VE responded that there would be no work for such a person. If, therefore, Hunter was limited in his ability to concentrate, then the ALJ's conclusion that his mental condition had "little or no effect on the occupational base of unskilled work at all exertional levels," AR 30, was error.

In fact, both Dr. Caccavale and Dr. Morcos identified just such a limitation ("focus problems" in Dr. Caccavale's phrasing, AR 502, and "difficulty maintaining attention and concentration" in Dr. Marcos's, AR 351–52). The ALJ gave "significant weight" to Dr. Caccavale's opinion because he "is a treating source," "has a specialty in psychiatry," "has a longitudinal history of treating the claimant since at least 2012," and because his opinion was well-supported and consistent with the medical evidence. AR 29. He gave "some weight" to Dr. Morcos's opinion, noting that "she only examined the claimant on a one-time basis and her opinion contained vague terms which were not quantified in a medical source statement." AR 29. In neither case, however, did the ALJ offer any reason for ignoring their opinions on Hunter's ability to concentrate while crediting them in all other respects.

7

*See Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) (disapproving "inconsistent use of the medical evidence").

The Commissioner argues that Hunter has failed to connect Dr. Caccavale's opinion to any work-related limitations, and that lack of focus due to occasional hallucinations is not necessarily inconsistent with the ability to do unskilled work. The connection between "focus problems" and the ability to work "on a sustained basis" is obvious. It is reinforced by Dr. Marcos's reference to "difficulty maintaining attention and concentration." There is, in short, at least a concern that someone with focus problems or difficulty maintaining attention and concentration could not do unskilled work as defined in SSR 85-15.

It is true that Dr. Caccavale described Hunter's hallucinations as "occasional." It does not follow that an occasional hallucination could not significantly impact concentration. Another Social Security Ruling defines "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. We know from the VE's testimony that anything over 15 percent of the time would preclude gainful employment.

The Commissioner argues that Hunter bore the burden of proving his RFC. But the ALJ is under a concomitant duty to develop the record, even if the claimant is represented by counsel. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). That duty includes seeking

additional information when the existing record "does not contain all the information we need to make our determination or decision." 20 C.F.R. § 416.920b(b). Instead of ignoring Dr. Caccavale's assessment of Hunter's ability to focus, or assuming that the assessment did not imply a significant limitation, the ALJ should have asked Dr. Caccavale for clarification or sought evidence from another source. *See id.* § 416.920b(b)(2). One potential source was Dr. Morcos; before giving her opinion less weight because she used "vague terms," AR 29, the ALJ should have asked her to be more concrete in her assessment.

The current version of the Commissioner's regulations leaves it to the ALJ's discretion to "determine the best way to resolve the inconsistency or insufficiency [in the existing record]." 20 C.F.R. § 416.920b(b)(2). It still requires that the inconsistency or insufficiency be resolved.

Therefore, the Court must remand. On remand, the ALJ should develop the record regarding Hunter's ability to concentrate. He will presumably seek clarification from Dr. Caccavale. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651, 10652 (Feb. 23, 2013) ("[W]e expect that adjudicators will often contact a person's medical source(s) first whenever the additional information sought pertains to findings, treatment, and functional capacity, because the treating source may be the best source regarding these issues."). He may also seek clarification from Dr. Morcos and additional opinion

9

evidence from any acceptable source. Based on the supplemented record, the ALJ should then determine whether and to what extent Hunter's ability to concentrate is limited. If the limitation means that Hunter would be off-task 15 percent of the time or more, then he must find that Hunter cannot do unskilled worker and, therefore, that he is disabled.

### III

For the foregoing reasons, Hunter's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, and the matter is remanded. Because the ALJ reached step five of the sequential evaluation process, and because Hunter first applied for benefits in December 2012, the Court will impose time limits on the proceedings on remand. *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004). The ALJ must develop the record and render a decision within 120 days of this memorandum and order. If the ALJ denies benefits, the Commissioner must render a final decision within 60 days of the ALJ's decision. If either time limit is exceeded, the Commissioner shall immediately calculate benefits.

**SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 23, 2019

10